PROVOSTY, J.
The Pontehartrain levee district was created by Act 95, p. 99, of 1890. Its limits are fixed by this same act as follows:
“That all that part of the parish of East Baton Rouge, lying south of the city of Baton Rouge, and * * * shall constitute a levee district,” etc. Section 1.
By Act 1G9, p. 327, of 1898, the southern) boundary of the city was moved 1,000 feet further south. Thereby a part of plaintiff’s property was brought within the city limits; and the question is as to whether it has been taken out of the levee district, so as to be no longer subject to the district taxes.
[1] The General Assembly, in granting a new charter to the city of Baton Rouge, was not legislating- with reference to the levee district; hence, this new charter, changing the lower limit of the city, has not had the effect of changing the upper limit of the district.
It could have had that effect only if the intention of said act creating the district had been that no part of the city of Baton Rouge should ever be within the district, but that the upper, or north, limit of the district should conform automatically with any change that might take place in the lower, or south, limit of the city.
[2] The learned counsel for plaintiff does not, however, contend that this interpretation could be put upon said act. Nor could he do so with any hope of success; for, •manifestly, the intention of said levee district act was that the limit of the district as thus fixed by it should he permanent Its reference to the city of Baton Rouge was to the city as then existing, not as it should, or might be, in the future. The lower line of the city was adopted for the upper line of the district as being a legally established, well-known, and supposedly permanent line. An essential feature in the creation of a taxing district is the fixing of its limits. That these limits, a matter so vital, should be left to shift with the expansion or shrinkage of a city, or with the changes in the limits of some adjoining political subdivision of the state, is not to be thought of.
What is contended by plaintiff’s learned counsel is that the new city charter has had the effect of amending the said levee district act, in respect to this upper limit of the district, because the two acts would otherwise be inconsistent in that respect, and the charter is the later legislation.
[3] In their actual operation the two acts do not clash. For nothing stands in the way of a city being included within a levee district, in whole or in part. Most of the cities of the state are within levee districts.
*737 [4] But, says counsel, the two acts, as affecting the same territory, cannot coexist under the Constitution, because both authorize the imposition of taxes for levee purposes, and this double taxation would be unconstitutional.
There might be such inconsistency if the two acts together authorized taxation beyond the constitutional limitation. But they do not. Under the Constitution, the district may levy 10 mills for levee purposes, and the municipality 10 mills for municipal purposes. No more than this is authorized by the two. acts together. Very true, in the long list of powers conferred upon the city council is found the one “to provide for a levee and drainage system, and open such carials or natural drains,” etc. But this is-very far from meaning that levee taxes beyond the' regular city alimony may be imposed. .All it means is that out of its 10 mills’ alimony the city may do work of that kind. All the cities of the state situated within the levee districts are authorized to impose the like taxes, and the thought has never occurred to any one that there was any conflict between this and the authority of the levee district to impose the levee taxes.
The trial court rejected plaintiff’s demand.
Judgment affirmed.